# Streine v. Commissioners of Campbell Courthouse District, et al.

(Decided October 3, 1912.)

## Appeal from Campbell Circuit Court.

1. Courthouse—Maintenance of—Commissioners of Courthouse District—Acts Creating and Amendments Thereto—Construction of—Public Buildings.—The power conferred by the act enacted by the General Assembly in the year 1882 (Acts of 1881-2, Vol. 2, page 569) and the amendments thereto, including an act passed in the year 1898 (Acts, 1898, page 129), upon the Commissioners of the Campbell Courthouse District to maintain the courthouse and the courts and officers therein, carries with it the authority to maintain the courthouse in a condition suitable for the purpose for which it was intended, and necessarily includes the power to construct a fire-proof vault addition thereto for the purpose of preserving the records required to be kept therein by the county clerk.

2. Courthouse—Indebtedness in Excess of Revenue and Income—Section 157, Constitution—Pleading.—An allegation in a petition that the Commissioners of the Courthouse District were indebted in the sum of $6,103.00, which was for an indebtedness incurred in a previous year beyond the income for said year, without the assent of two-thirds of the voters of the district, voting thereon, being merely a legal conclusion, is not sufficient. In such a case it is necessary to allege facts showing that the indebtedness was so incurred.

3. Courthouse—Commissioners—Duration of Office.—Where commissioners of a courthouse district have the power to levy a tax not only to build a courthouse, but to pay the expenses of maintaining it, and the courts and officers therein, their right of office does not cease upon the completion of the building, but continues for the purpose of maintaining the building until the Legislature otherwise provides.

OTTO WOLFF, W. LANFERSICK for appellant.

KELLY & REGENSTEIN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This action was brought by appellant, Frank H. Streine, against Phil J. Veith, Fred Stine and George G. Lindsay, Commissioners of the Campbell County Courthouse District, for the purpose of enjoining them from building a fire-proof vault addition to the courthouse at Newport. The prayer of the petition also asked that said commissioners be restrained from expending any revenue for the year 1911 for purposes other than the purpose for which the tax was levied; that they be enjoined to take into account the excess levy for the year 1911 in making their levies for the years 1912 and 1913, and that so long as said fund is sufficient to maintain the courthouse and the courts and officers therein, they shall levy no further tax. The petition further asks that their accounts be audited by a master in chancery, and that they be required to account for all money unlawfully expended by them, and for all proper relief. By amended petition, it is charged that the defendants constituted a corporation, created for the purpose of erecting and paying for the courthouse; that the courthouse was completed in the year 1908, and paid for; that the purpose for which said corporation was created having been exhausted, its powers were exhausted, and the fiscal court of Campbell County was

now the owner in trust for the citizens of Campbell County of the buildings thereon, and it alone had power to make additions to or alterations in the building. A demurrer was sustained to the petition, and to the amended petition, and the petition as amended dismissed. Streine appeals.

It appears from the petition that the Board of Commissioners, on May 27, 1910, adopted a resolution levying a tax of six cents on each $100 valuation of all property in the Courthouse District, for the purpose of paying the debts and interest of such district, maturing in the year 1910. It is alleged that the assessed value of all property in said district in the year 1910 was $23,-144,284. That at the beginning of the year 1910 the commissioners had in their possession unexpended balance, collected the previous year, of $3,707.21; that they received from Campbell County by virtue of the assessment $16,176.14. From the State of Kentucky, for lighting and heating the courthouse rooms $1,984, from the city of Newport $725, and from the collection of delinquent taxes $45.71; that out of said funds they paid for maintaining the courthouse, and the courts and officers therein, the sum of $6,744.83. It is further alleged that the commissioners expended in 1910 $14,-557.93, for repairing the courthouse, which was a diversion of the money to purposes other than the purpose for which it was levied and collected. The petition further charges that the Commission was indebted in the sum of $6,103 for an indebtedness incurred during a previous year beyond the income of the year, and without the assent of two-thirds of the voters of the district, voting at an election held for that purpose; but notwithstanding this fact the commissioners paid the indebtedness of $6,103, and after paying the expenses of maintaining the courthouse, and the $14,557.93 for repairing same, the commission had in their possession on January 1, 1911, a balance of $1,535.30. The petition contained the further allegation that there is required to maintain the courthouse and the courts and offices therein the sum of not more than $7,000 annually; that the valuation of all property taxable by the State of Kentucky for said purpose in the Courthouse District for the year 1911 is $23,325,957, and a levy of two cents thereon would yield $4,665, and that this sum, together with the balance in the hands of the commissioners, and

the amount payable by the State for heating and lighting the court rooms, would be sufficient. It is further charged that on April 28, 1911, the commissioners levied a tax of six cents upon each $100 of taxable property, and that the purpose stated in the resolution by which the tax was levied was "For the purpose of paying the debts and interest of said district maturing in the year 1911;" that the revenue resulting from this levy would amount to about $19,000, which was three times as much money as would be necessary for the purposes authorized by the law under which the commission is acting. There is an additional allegation that the commissioners have commenced, and intend to complete, an addition upon the south side of the courthouse at a cost of about $10,000, and intend to pay for same out of the taxes for the year 1911; that they had no right or authority to build any additions to said courthouse, and had not levied a tax for such purposes, and had no right to expend any of the revenue of 1911 for such purposes. The petition then sets out the intended works and the accepted bids therefor, showing that the addition contemplated was a fire proof vault and certain improvements in the county clerk's and sheriff's offices.

Campbell County has less than 150,000 population, and is a separate judicial district. Newport is a city of the second class in Campbell County. Alexandria is the county seat of the county. Under the law, courts are held in Newport and at Alexandria. In the year 1882, the General Assembly enacted a law providing for the appointment of three commissioners, designated by said act as "Commissioners for the Courthouse District," to be appointed by the circuit court. By this act the commissioners were given the power to, and did, construct a courthouse at a cost of $50,000. To this end, on October 1, 1883, they issued $50,000 worth of bonds, pursuant to the provisions of the act, and to a vote of the people theretofore had. For the purpose of paying the bonds, the commissioners were authorized to levy and collect a tax within a certain district designated by the act as "The Courthouse District." Under the terms of this act, the commissioners were given the power to maintain the courthouse, and to levy taxes for that purpose. By an act of the General Assembly, approved March 13, 1886, the commissioners were given control of the courthouse and grounds belonging there-

to, and required to cause the court and jury rooms in the courthouse to be property lighted and warmed and kept clean for the holding of chancery, common law, criminal and county courts; also the office rooms of the circuit and county clerks, the master commissioner and sheriff, and to cause the dials of the clock on the tower of the courthouse to be illuminated at night. They were also empowered and required to appoint a janitor, and to cause him to be in attendance upon said court during the time of said terms at Newport. By an act of the General Assembly enacted in 1898, which became a law without the approval of the Governor, all of the acts theretofore enacted which provided for the commissioners' paying any part of the county expenses, or paying anything more than the bonds and interest coupons thereon, issued to build the courthouse, and the expense of maintaining the courthouse and the courts and officers therein, were expressly repealed.

By an act of the General Assembly, approved February 21, 1863, the clerk of the Campbell County Court was required to record at his office in the city of Newport, in suitable books to be procured for that purpose, all recordable instruments affecting realty within a certain district in Campbell County.

The principal question involved on this appeal is, whether or not the commissioners of the Campbell County Courthouse District have the power to build an addition to the courthouse in the form of a fireproof vault, to protect the records of the district. While certain powers theretofore delegated to them were repealed by the act of 1898, they still have the power to levy a tax for the purpose of paying the expenses of maintaining the courthouse and the courts and officers therein. The life and success of every community are necessarily wrapped up in its property rights, and property rights are to a great extent dependent on the records of the county clerk's office. Time was when their value was not thoroughly appreciated, and they were not guarded with the necessary care. Much confusion and litigation has arisen from the destruction of such records by fire. As civilization has advanced, the necessity for protecting these records has begun to be appreciated, and to that end almost every county is beginning to take steps to provide fire-proof vaults. The power to maintain the courthouse carries with it, by

necessary implication, the power to maintain it in a condition suitable for the purpose for which it was intended. One of these purposes was the protection of the records of the courthouse district, and in no way can these records be better protected than by the erection of a fire-proof vault in which to place them. We, therefore, conclude that the commissioners have the power to construct the fire-proof vault in question. Another phase of this question was before us in the case of City of Newport v. Veith, 144 Ky., 637, where the city of Newport was contending that the commissioners of the Courthouse District had no right to build an addition to the courthouse building situated on the public square in the city of Newport. In discussing this question, the court said:

"Without going into the question of the respective rights of the county and city in the control and ownership of this public square, and conceding for the purposes of what we have to say that its control is vested in the city, we are, nevertheless, of the opinion that when the city surrendered to the Courthouse Commissioners the right to erect and maintain a courthouse and public buildings on this square, that this carried with it as a necessary consequence the right to make such additions to the courthouse and public building from time to time as the needs of the public and the uses and purposes for which the building was intended required."

But it is insisted that the commissioners should be enjoined from paying for this addition, because the resolution levying the tax is void under section 180 of the State Constitution, which provides that:

"Every act enacted by the General Assembly and every ordinance and resolution passed by any county, city, town or municipal board or local legislative body levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

In the case of City of Somerset v. Somerset Banking Co., 109 Ky., 556, a levy "for the purpose of paying claims against the county" was held to be sufficient.

In the case of Burch v. City of Owensboro, 18 R., 284, the following ordinance, levying a license tax, was held to be valid:

"That all moneys received from licenses under the provisions of this ordinance shall be paid to the treasurer and placed to the credit of the general revenue fund of said city, and shall be used and expended in defraying the current and incidental expenses of the said government, except fifteen per cent thereof shall be paid to the treasurer of the board of education for the use of the public school of the said city, and shall be paid over by the said treasurer to the treasurer of the board of education monthly."

In the case of Pulaski County v. Watson, &c., 106 Ky., 505, an order of the fiscal court, levying a tax "for the purpose of paying claims against the county" was held sufficient. In the case of town of Mt. Pleasant v. Eversole, 29 R., 830, an ordinance levying a tax "for municipal purposes" was held to be sufficiently definite.

In the instant case a tax of six cents on each $100 valuation of all property taxable by the State of Kentucky for State purposes in said district was levied "for the purpose of paying the debts and interest of the said district maturing in the year 1911." Under the authority of the above cases, we conclude that the word "debts," modified by the clause "maturing in the year 1911," was used in the sense of current expenses incurred during the year in maintaining the courthouse, and is no more indefinite than if the resolution had directed the levy of the tax for the purpose of "paying claims" against the district. We, therefore, conclude that the resolution in question is not void because of the failure to comply with section 180 of the Constitution, supra.

As the commissioners were authorized to levy a tax for the purpose of maintaining the courthouse, and the construction of the addition in question is included in the power thus given, and as the resolution levying the tax was sufficiently definite, it follows that the expenditure of the money for such purpose was not a diversion of the funds to a purpose other than that for which they were levied and collected.

There is an attempt to plead that the commissioners had incurred an indebtedness of $6,103 in a previous year beyond the income for said year, without the assent of two-thirds of the voters of the district, and that this debt was paid out of the levy for the year 1910, and was, therefore, a diversion of the funds for that year.

The petition in this respect is not good. It simply pleads a legal conclusion. We have repeatedly held that it is necessary in such a case to allege facts showing that the municipality had incurred an indebtedness in excess of the revenue and income provided for the year without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose. City of Louisville v. Gosnell, 22 R., 1524.

It is further insisted that the petition shows that a levy of two cents is all that is necessary to defray the expenses of maintaining the courthouse, and that the commissioners should be enjoined from levying a tax in excess of that amount. We have repeatedly held that so long as municipal governments made levies of taxes within the limits prescribed by law, courts will not undertake to inquire into the necessity of the levy at the hands of the individual taxpayer. Anderson, &c. v. City of Mayfield, 93 Ky., 234; Mayfield Woolen Mills Co. v. City of Mayfield, 111 Ky., 172. As the commissioners of the Courthouse District were authorized to levy a tax of six cents for the purpose of maintaining the courthouse, and as they are the judges of the necessity for such expenditures, we cannot inquire into that necessity.

Lastly, it is insisted that as the courthouse in question has been completed and paid for, there is now no further necessity for the offices of commissioners, and that therefore their rights and duties have necessarily ended. The act under which the offices of the commissioners were created, and the several amendments thereto, contemplate not merely the construction of the courthouse, but its maintenance after its construction, and the levy of a tax for that purpose. We, therefore, conclude that the offices remain until the Legislature otherwise provides.

Judgment affirmed.