# State Highway Commission of Kentucky v. Board of Councilmen of City of Frankfort.

(Decided June 24, 1932.)

(As Modified on Denial of Rehearing Dec. 9, 1932.)

800

BAILEY P. WOOTTON, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellant.

F. M. DAILEY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Franklin circuit court sustaining demurrer of plaintiff, Board of Councilmen of the City of Frankfort, to the amended answer of defendant, the State Highway Commission of Kentucky, wherein the defendant was ordered (1) to specifically perform a certain road contract made and had with the plaintiff city on July 23, 1923, by which the defendant Highway Commission agreed with plaintiff city to construct and maintain a state highway over certain of its streets, 1.972 miles in length, within the city limits of Frankfort, known as federal highway No. 60, the cost of its construction to be borne equally between the plaintiff city and the defendant Highway Commission and (2) pay to the Board of Councilmen of the City of Frankfort $51,536.23 with interest from January 17, 1929, until paid, such amount being one-half of the cost price of improving, constructing, and reconstructing with a permanent standard type of street according to the contract made with plaintiff city.

This is the second appeal of this case, it having been first before this court on appeal from a judg-

ment sustaining the defendant Highway Commission's special demurrer to plaintiff's petition in equity and petition as amended, on the alleged ground that the suit was in effect one against the commonwealth without previous consent of the General Assembly having been obtained. Upon this appeal, the judgment of the lower court was reversed upon the ground that it erred in holding that the defendant Commission was not suable upon the contract, alleged in its petition and amended petition to have been made by it with the defendant Commission, this court therein holding that plaintiff's suit was one in the nature of a mandamus action to compel the defendant Commission to perform its contract had with it, and that it was suable in said action therefor.

The decision and holding of the court upon this first appeal of the Board of Councilmen of the City of Frankfort v. State Highway Commission et al., will be found reported in 236 Ky. 253, 32 S. W. (2d) 1008, 1011, reference to which is here made for a full statement of the facts of the case therein recited. A brief statement, however, of these facts should be here again given for the purpose of more clearly considering the question now presented upon this second appeal.

Briefly summarizing them, it appears that on November, 1924, the plaintiff city filed in the Franklin circuit court its petition in equity against the State Highway Commission et al., wherein it alleged that on July 23, 1923, the defendant Commission entered into a written contract with it, by terms of which it obligated itself to take over certain of its named streets, or portions thereof, extending between its eastern and western limits, and to construct thereon a permanent highway of the approved standard and type, and to thereafter maintain the same as a part of its highway system; that it was therein provided that the state highway engineer and associates should have charge and supervision of the construction and maintenance of this city link of its highway, and should make all surveys, plans, and specifications for its construction, and advertise and let contract for said work as under its said contract authorized and made by it with plaintiff city under section 4356t-8, Kentucky Statutes, 1922 Edition; also that the cost thus incurred in constructing said streets should be equally borne by plaintiff city and the defendant Highway Commission; that, in consideration of this

undertaking, plaintiff city agreed to turn said streets or parts thereof, when so paved, over to the control of said defendant Commission, and to join with it in the letting of the contract for such work and to do all things necessary to comply with the provisions of the law in selecting the type of highway and material out of which the same should be constructed. Further it alleged that these streets or parts of streets were to be turned over to the defendant to form a link in the Midland Trail, state project No. 17-A, Franklin county, consisting of 1.972 miles in the city of Frankfort, and that the purpose of the defendant in so contracting with the plaintiff was thus to have constructed said streets and maintain same as a part of its said state highway project.

It further alleged that the city had co-operated with defendant by advertising and causing to be done all things necessary or required of it in carrying out this joint undertaking; that, pursuant to the provisions of the contract, and in compliance therewith, it adopted and passed the necessary resolution and ordinance, in accordance with section 3457, Kentucky Statutes, whereby the need for the construction of these streets was declared, and the construction of a suitable permanent highway of the approved standard and type (as agreed upon by the Commission) was duly provided for at the cost of the abutting property owners along said highway; that thereafter the defendant Commission made due advertisement for bids for said work, which were in due course received, when the defendant Irving Construction Company was found to be the lowest and best bidder at the price of $215,052.15, and which bid the said company manifested its willingness and ability to at once duly qualify and perform, upon its acceptance.

It appears, however, that neither said company's bid, nor any bid, was ever accepted by the defendant Commission as provided by its contract with plaintiff city, nor was any further step or action taken by the defendant Commission at such time or any time thereafter to observe or perform this, its contractual undertaking entered into with the city, but, on the contrary, the defendant Commission, on May 15, 1924, did undertake to rescind its contract entered into with plaintiff city by the former highway commissioners, without notice given to or with the consent of the plain-

tiff city thereto, and has since such time failed and refused to in anywise recognize or perform its said contract.

Later thereafter, in January, 1929, plaintiff city filed its further amended petition, wherein it alleged that the city had, since the filing of its original petition seeking to specifically enforce its contract for the construction of its streets by the defendant Commission, been compelled, through defendant's continued failure to perform its contract, itself to construct such "suitable, permanent highway of the approved standard and type" upon these streets as contracted for by defendant Highway Commission with it; that it had by further proper ordinances provided for the construction of these streets of the standard type and character, provided for in its contract with defendant Commission, to be constructed at the cost of the abutting property owners along said highway; had employed the services of a capable and efficient engineer to prepare survey, plans, and specifications therefor according to the provisions of their contract calling for a standard and permanent type of construction of said streets of asphalt and concrete, and duly advertised for bids therefor, and, pursuant thereto, had let the contract therefor and had thereunder constructed such permanent and standard type of asphalt and concrete highway over this city link of the state highway as contracted for by the Commission with it; that said construction work had been done at a cost to the plaintiff city and its abutting property owners along said constructed roadway of $103,072.46, and that, under the defendant's contract with it, the defendant Highway Commission owed an one-half part of such construction cost of these streets, or $51,536.23; and wherefore it prayed both, as in its original petition, that the defendant be required to carry out its contract by paying it the sum of $51,536.23, an amount representing the defendant Commission's promised one-half share of the cost of such construction, with interest until paid, and that the defendant Highway Commission be required to take over and maintain these streets so constructed by the city under and pursuant to its contract had with defendant.

Defendant Commission filed its answer thereto, admitting having entered into the alleged contract with the city to construct these streets upon the terms that it

would pay one-half of the cost thereof, and further pleaded that the contract made by it with the city was ultra vires and void as calling upon it to expend more than its estimated revenue receivable for the fiscal year in which it was made, and, further, that the suit was an effort by the city, in effect, to sue the state, in suing its agent, the defendant Highway Commission, without its consent given therefor, and upon the latter ground filed special demurrer to plaintiff's petition and petition as amended, which demurrer was sustained by the lower court, resulting in the first appeal by plaintiff city of the case.

Upon this appeal, the court, reversing the lower court's ruling on the demurrer, in its opinion said:

"It is to be observed that in cases of this kind the distinction is drawn between suits seeking to create or increase the liability of the state, and suits seeking to compel administrative officer to satisfy a liability theretofore created—one to establish a right and the other to satisfy a right already established under authority of law.

"In the instant case, according to the allegations of the petition, the liability of the commonwealth was created by the contract. It is now a matter of enforcing the contract. Of course, there may be presented a valid defense, but we are concerned here only with the sufficiency of the petition as amended on demurrer.

"The court is of the opinion that the cause of action stated in the petition as amended comes within that class of cases which may be maintained against agents and officers of the state, and, therefore, that the court erred in sustaining a special demurrer to it."

On return of the case to the lower court, and after mandate of this court had been filed, defendant Highway Commission filed an amended answer to the petition as amended, in which it pleaded some seven alleged distinct defenses. To this amended answer, the plaintiff city demurred. Its demurrer was sustained, and, from this judgment sustaining it, this second appeal is now prosecuted. The written opinion of the lower court so adjudging is as follows:

"This cause coming on to be heard upon the plaintiff's demurrer to the answer of the defendant as amended, and the court having considered same and being advised sustains said demurrer to said answer as amended, and to each paragraph thereof. * * *

"Thereupon the plaintiff, by counsel, moved that the case be submitted for final judgment upon the pleadings and exhibits for judgment in accordance with the prayer of its petition and amended petition and the court being advised sustained said motion, * * *. It is therefore ordered and adjudged by the court that the State Highway Commission and each member thereof is hereby ordered and directed to carry out the terms and conditions of the contract with the plaintiff and to take over and maintain the streets running through the city of Frankfort on the Federal Highway known as number 60. * * *

"It is further ordered and adjudged that the State Highway Commission pay to the Board of Councilmen of the city of Frankfort, this plaintiff, the sum of Fifty-one Thousand and Five Hundred and Thirty-six Dollars and Twenty-three Cents ($51,536.23) with interest from the 17th day of January, 1929, until paid. This being ½ of the cost price of improving, constructing and reconstructing with a permanent type of street according to the contract entered into by the plaintiff and defendants the following streets. * * * This money to be divided and prorated to the abutting property owners along these streets as their interest may appear and according to the amounts that they paid and to the persons enumerated in the amended petition, and for its cost herein expended. * * *"

From this judgment, sustaining plaintiff's demurrer to appellant's answer and amended answer and adjudging plaintiff the specific relief sought in its petition and amended petition, appellant prosecutes this appeal, seeking its reversal upon the grounds that the lower court prejudicially erred in so ruling.

Appellant's answer and amended answer pleaded many alleged defenses to plaintiff city's action, but we

will confine our consideration to such of them as appellant by its counsel's brief has seen fit to present for our consideration and argue as material in support of its appeal, insisting that this judgment should be reversed because of the alleged error so complained of.

Appellant contends that, as pleaded in its answer, the contract is void under the Kentucky Constitution, sections 49 and 50 upon the ground that defendant Commission in making this said contract with the city, whereby it undertook to pay for one-half the construction costs of the streets in question, exceeded by such contracted expenditure its estimated revenues for the said fiscal year for the reason that contracts so violating sections 49 and 50 of the Constitution were, as adjudged in the recent case of Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855, ultra vires the right and authority of the defendant Commission. While there is no doubt entertained by us as to the soundness of that decision of this court nor any question entertained as to its propriety, under the facts therein presented, we are yet of the opinion that the enunciated and applied rule of the court therein is not applicable to or controlling of the question herein presented upon appeal, for the reason that, as we conclude, the allegations of the answer made in respect to the defendant Commission's having, at the time of its making this contract with the plaintiff city, exceeded its anticipated revenue for the fiscal year, were the conclusions of the pleader, rather than a proper pleading of allegations of fact, and therefore this defensive allegation of the answer so made, being based or predicated only on an estimated lesser amount of revenue, was only a conclusion, improperly pleaded, the truth of which would not be admitted by plaintiff's demurrer thereto.

It is argued that in sustaining the demurrer, filed by the city to the amended answer of the appellant, the lower court erred.

The allegation of the amended answer demurred to is that the amount of the contract had by the appellant with the appellee added to the other then existing indebtedness of the state was such an amount as to exceed the anticipated or estimated revenues of the state.

Appellants insistence that so much of the answer as deals with the debts and liabilities of the Highway Commission, for the purpose of showing they exceed

in their amount the income and assets of the Commission for the remainder of the biennial period, is sufficient, overlooks the fact that it does not present the amounts of the debts or liabilities it attempts to set forth, but in most instances same are pleaded merely as an *estimate* thereof.

An "estimate" has been defined as follows:

"A valuing or rating, especially from incomplete data; rough or approximate calculation."

Webster's New International Dictionary.

Also defining the word "estimate," substantially to the same effect, see Bautevich v. Great Southern Lumber Co., 129 La. 857, 56 So. 1026, 1027, Ann. Cas. 1913B, 848, where it is said:

"The word 'estimate' precludes accuracy, and its ordinary meaning is to calculate roughly or to form an opinion from imperfect data. The word 'estimate' has no more certainty than the terms 'about' or 'more or less.'"

Such being the meaning and defined intendment of the word "estimate" it will be observed that an allegation of an estimate merely is not only indefinite but insufficient to constitute a defense, or properly present an issue.

At common law a pleading was sufficiently definite if it was clear enough to show the ground relied on in support of the pleader's claim or defense. This rule of pleading has not been altered, changed, modified, or supplanted by the Code. Rather, the Code requires the same degree of definiteness as was required by common law.

There is nothing in the answer, considering the debts and liabilities attempted to be presented as a defense, showing that the contract with the city of Frankfort was within the inhibition of the Constitution forbidding the incurring of indebtedness in excess of its incoming revenue for the remainder of the biennial period. No more is presented by the answer than a statement of mere estimates and which, as such, are in the nature of conclusions; in fact, nothing which would enable the court, even in rendering a default judgment, to ascertain whether the indebtedness at the time created was within the limits of the Constitution. Rowland

v. City of Paris et al., 227 Ky. 570, 13 S. W. (2d) 791, and other cases.

The applicable and controlling rule, where such indefinite or uncertain allegations are presented as a defense, was stated by this court in Reid v. Lyttle et al., 150 Ky. 304, 150 S. W. 357, 359, as follows:

"It is an elementary rule of pleading that * * * the pleading is to be most strongly construed against the pleader. * * *

"At common law a pleading was sufficiently definite if it stated the facts with such certainty as would enable the opposite party and the court and jury to understand the ground relied on by the pleader in support of his claim or defense; and the Code provision supra is to the same effect. And, while indefiniteness or uncertainty should usually be presented by a motion that the pleading be made more definite and certain, a demurrer is the better procedure where the uncertainty is such as to state no cause of action or defense. Louisville Ry. Co. v. Shanklin, 98 Ind. 573; Madden v. Railway Co., 30 Minn. 453, 16 N. W. 263."

This case and the case of Rowland v. City of Paris et al., supra, are conclusive of the question of the insufficiency of the answer in this respect.

Further is the correctness of this claim challenged by the fact, also appearing of record herein, that the defendant Commission, when attempting to rescind this contract as coming within the litigated class of those contracts considered in the Billiter Case, refers to it as being one of the list of contracts that were invalidated by the Court of Appeals in the awards of December 10, 1923, and January 8, 1924, and requested its cancellation as such by the Commission, and same was, by reason of such mistaken classification of it, by the Commission ordered canceled. The contract in question, having been entered into by the Highway Commission at a much earlier date than those road contracts named and litigated in the Billiter & Wiley Case, and therein adjudged to have exceeded the Commission's constitutional limit at that time, would not be operative as a ground for the cancellation by the Commission of this contract entered into at an earlier time, when it might have been well within the contractual limits of the

Commission. We therefore conclude that appellant's contention, here made, that the contract in question is void as being of ultra vires the authority of the Commission upon such alleged grounds that it thereby exceeds its fiscal year's estimated revenue, is only a pleading of the appellant's conclusion in this, and must therefore fail. Davis v. Newport, 239 Ky. 610, 40 S. W. (2d) 281; Baker et al. v. Rockcastle County Court et al., 225 Ky. 99, 7 S. W. (2d) 846; Rowland v. City of Paris et al., 227 Ky. 570, 13 S. W. (2d) 791; King v. Christian County Board of Education, 229 Ky. 234, 16 S. W. (2d) 1053.

Appellant next urges and most strongly insists that defendant Commission cannot be compelled by mandamus to perform this, its street contract, whether ultra vires or not. We are of the opinion that the law of the case as given upon the first appeal of this cause is an adequate answer and conclusive of this contention.

The question presented by this attempted plea of the answer is, we admit, purely one of law to be determined upon demurrer as to whether or not the denials and admissions so pleaded by the answer constituted a defense. For our clearer consideration of this question, however, it may be well to again inquire as to just what was the character of the contract made on July 23, 1923, by the State Highway Commission with the city of Frankfort. The purpose and scope of their written contract we find is in part herein stated as follows:

"That whereas the Midland Trail, a State primary road, passes through the City of Frankfort over the streets hereinafter designated from the eastern limits of said city on the Versailles Pike to the western limits of said city on the Louisville Pike, and whereas, the streets over which said highway passes were in the first instance built on a plan or type of construction which is inadequate for the traffic that daily passes over said streets, and are so out of repair as to greatly impede the public travel thereon, and will require reconstruction on a plan or type which will endure under the severe use to which said streets are subjected; and whereas the said streets are on an average much wider than the type used for the State Primary

Roads, and in order to take care of the joint traffic of the State Highway and the City, will require a heavier type of construction which will cost approximately 50 per cent. more than the cost of the State Primary Road; and whereas, the City of Frankfort is a city of the third class, in which a commission form of government has been adopted, has through its Common Council proposed to turn over said streets to the State Highway Commission for the purpose of constructing, and maintaining a highway thereon of the standard and type necessary to accommodate the public travel under the terms and conditions herein specified, and which proposal on the part of the City of Frankfort seems just and fair as between the City and the State Highway Commission, and has been duly approved and accepted by the State Highway Commission.

"Now, therefore, in consideration of the premises, and of the authority expressly conferred by Section 4356t-8, Kentucky Statutes, the parties hereto have this day, and do by these presents, entered into the following contract and agreement."

It is further admitted that, by the terms of said contract, the State Highway Commission agreed to take over the road after its construction and also to pay one-half the costs of improving the streets. Such is the relief that has been adjudged the plaintiff city in this judgment now appealed from. The contract shows by its own terms that the defendant Commission possessed express statutory authority to make this contract with the plaintiff city; that in its making it exercised its discretion in determining that same was a fair and proper way of securing the construction of this city link of its state highway and upon terms deemed fair and just at the time by both parties to the contract. Defendant Commission acted as a duly authorized agent for the commonwealth in making said contract, and in its making exercised the discretionary power by the statute vested in it to so contract with the city; also that the plaintiff city has in all stages of its dealing under this contract acted in good faith and with entire willingness to co-operate with the defendant Commission in carrying out and performing all its terms as agreed upon; that only after the defendant Commission's long-

continued failure and refusal to keep good faith with it by performing this agreement did the plaintiff city, under the compulsion of its streets having become in bad condition through lack of the repair and construction work contracted for, and thereby rendered unfit and unsafe for public travel, undertake, itself, to carry out and perform this contract, according to its terms and specifications, by the construction of the type and standard of road called for by the contract, and did so perform this construction work at the cost of its citizen owners of property abutting the streets in question, as also provided by the contract, and by which defendant Commission agreed and promised to pay its one-half the cost of such street construction work.

Reimbursement of its citizens for the one-half part of this expense is by the petition sought against the defendant Commission as being the present way and means had for requiring the appellant to specifically carry out its contract. The appellant, however, objects to being required, as a state agency, to keep its agreement, and denies that mandamus is here a proper remedy to compel it to carry out its contract, as the carrying out of this road building contract is a duty involving discretion in its exercise, whereas it contends that mandamus only lies to enforce the performance of duties to the extent that such duties are ministerial, and therefore, for example, counsel argues that the fiscal court in the exercise of its power to build roads acts legislatively, and as such has discretionary power, wherefore a writ will not lie to compel its performance of such duties. Of course, such point may be conceded, without advancing the force of appellant's argument, as such instance we deem not analogous to that here presented. A more analogous case would be, perhaps, one where the city of Frankfort was seeking by such writ to compel the Highway Commission to make the contract in question with it, an act requiring the exercise of its discretion in such instance as to whether or not it considered it desirable to make such contract rather than as in the instant case presented, being here a suit to require it to perform a contract it has already made, in the exercise of its official discretion, with the plaintiff, and which it is now seeking only to have it perform as its ministerial or in good faith carry out.

This court, in considering what we deem an analogous question with that here presented, in the case of Gordon, Huffaker & Garnett v. Morrow, 186 Ky. 713, 218 S. W. 258, 266, in speaking of the defendant Governor's right to cancel a contract of employment of the plaintiff attorneys made with them by a preceding Governor, used this language:

"When the Governor, under and by virtue of the statute, makes a contract for the use and benefit of the state, if he desires to cancel it, he can only do so upon the same terms and conditions that a private citizen could. His executive place does not authorize or permit him to break with impunity or at his pleasure, or upon his own terms, valid contracts that he or his predecessor have entered into. A contract made pursuant to statutory authority by the Governor for the state has the same binding force and effect as the contract of an individual. Franklin County Court v. Deposit Bank of Frankfort, 87 Ky. 370, 9 S. W. 212, 10 Ky. Law Rep. 506,"

and therein held that the Governor, no more than a private client, could have the services of attorneys for the benefit of the state, engaged under a contract, on its face regular and lawful, and then without cause discharge them and substitute other counsel in their place without arranging for payment to them of such compensation as they were entitled to therefor. There is no question that full authority was expressly conferred upon the Commission by the Acts of 1920, c. 17, sec. 8 (formerly section 4356t-8, Ky. Stats.), to make the contract in question with the plaintiff city, though appellant contends that, even though such authority was by the statute given it, yet that, in the exercise of this authority in the making by it of the contract with the plaintiff city, it acted as an agent for the state, and cannot therefore be mandamused to perform it, as the suit in question is one in effect against the commonwealth in suing its Commission, when no authority has been given plaintiff city, as required by section 231 of the Constitution, to sue the state. However, we do not regard the suit in question as being one against the state or as being an attempt to mandamus it to perform the contract of its agent, but is one rather against the Com-

mission itself to require it to now perform the contract it, with full authority given it by the statute, made with this plaintiff. As said by the court in this case upon its previous appeal, supra:

"The immunity of the commonwealth as the sovereign from suit without legislative consent is absolute and unqualified. The State Highway Commission is an agency of the commonwealth and not a separate corporate body. * * *

"It is not a suit for damages or, strictly speaking, to collect a debt. It is a suit to compel the officers of the state to perform their undertaking made in behalf of the state under its direct authority. The rule that suits may not be maintained against officers or agencies who are but nominal parties where the state is the real party in interest does not apply where the suit is instituted against the agency or officer to compel performance of a duty required by statute. 25 R. C. L. 414. An action against state officers to compel them by mandamus or other similar process to perform official duties of a purely ministerial nature, involving no discretion as to the use of political or governmental power, is not a suit against the state and may be maintained without its consent. White Eagle Oil & Refining Company v. Gunderson, Governor, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397. The commission had exercised its authorized discretion when it made the contract."

A very satisfactory consideration and determination was also given the question herein presented by this court in the case of Reliance Manufacturing Co. v. Board of Prison Commissioners, 161 Ky. 135, 170 S. W. 941, 945, quoted with approval upon the first appeal of this case, supra, wherein the court spoke in this language:

"Cases like this present strong reasons why the courts should afford relief, unless the right to do so is unmistakably withheld. Public agents of the state ought not to be allowed to perpetrate a wrong or commit a breach of contract and prevent the injured party from seeking redress in the courts by shielding themselves behind the barrier that the state, upon grounds of public policy, has erected for its protection against suits, unless the suit plainly

falls within the prohibited class. The commonwealth of Kentucky does not desire to wrong any of its citizens or any one else. It wants, as do all well-governed states, to do what is right.''

The appellant finally contends that the contract cannot be specifically enforced, and that therefore mandamus does not lie, inasmuch as it is claimed by the defendant Commission that the contract sued on is illegal and cannot be enforced by a court of equity because (1) the commonwealth is prohibited by sections 176 and 177 of the Constitution from assuming the debt or pledging its credit to any municipality, and because (2) the contract, if enforced, would involve a violation of section 8, chapter 17, Acts of 1920, as then in effect at the time the contract sued on was entered into, and which provides in part as follows:

''In the event it is necessary to construct a road or street at a greater cost than is paid for construction of a like lineal mileage outside of the city or town such city or town must pay the additional cost of construction, and the details shall be agreed upon between such city or town and said State Highway Commission.''

We deem it sufficient answer to objection 1 that the state did not herein assume the debt of the plaintiff city or pledge its credit to it as alleged, for the reason that the street construction cost, to be incurred in the performance of this contract, was not under the contract made or to become a liability of the city, but rather that of the property owners abutting the improved city highway, who were to defray its expense and be reimbursed by the defendant Commission for an one-half part thereof. Neither do we regard the second objection tenable that the engagement of the Commission to pay one-half the cost of the said street construction, as called for by the contract, violated its authority as given by the section of the statute, supra, in alleging that one-half its cost per linear mile within the city was more than such cost per mile, of its outlying highway, as it is nowhere shown what was the cost to it for like linear mile of its highway constructed without the city limits, nor is it shown that it is constructing such like standard type streets outside the city limits as those here agreed to be constructed within the city at an equal division between the parties of its construction expense.

Further, it is claimed by appellant that there is a want of mutuality connected with the contract, supra, in that without the consent of the defendant Commission the defendant Kentucky Traction and Terminal Company was permitted by the plaintiff city to withdraw from its obligation to pay its share of the cost of construction of said streets. However, it appears pleaded in defendant's answer that the franchise of the said traction company to operate its cars in the city of Frankfort in effect at the time of the making of the contract in question thereafter expired, and upon its expiration a new franchise was advertised and sold by the city, under the terms of which this prior obligation to repair the streets was not imposed upon the purchaser of the new franchise. It is to be assumed that the parties, in making the contract and while specifying therein that the then traction company was to pay a portion of the construction cost of the streets upon which it operated, were cognizant of the fact that it was subject to change upon the expiration of its franchise, and that the parties could not therein and did not intend to provide for imposing obligations upon an uncertain subsequent owner or purchaser of such franchise, regardless of the terms upon which such franchise might be sold or without regard to whether any later franchise should be purchased of the city.

It is further contended by appellant that neither the supervision of the construction of these streets nor the preparation of the plans and specifications therefor was by plaintiff given to or left in charge of the defendant Commission's engineer, nor were the streets when constructed ever turned over to it by the plaintiff city, nor were the streets constructed as provided for under the terms of the contract.

These objections as urged that the city has in such way failed to perform the contract it sues on might possess more potency and be accorded more serious consideration by us were not the facts appearing herein of record attendant upon their pleaded presentation different from what they are by the record shown and in good measure admitted to be. From the record it satisfactorily appears that the plaintiff city has in good faith attempted and effected a construction of the streets in question in substantial conformity with the terms of the contract providing therefor; that, deserted by the defendant in carrying out their joint construction

undertaking, it has hired its own skillful engineer to supervise the construction of these streets according to standard plans and specifications therefor made, providing for permanent streets of the standard permanent type to be constructed of asphalt and concrete substantially as by their contract required. The defendant Commission cannot now rightfully complain, while refusing to retain within the charge of its engineer the construction of these streets and while refusing to participate or cooperate in their building or in furnishing the service of its engineer as agreed therefor, that the city has failed to complete the streets in conformity with the contract under the Commission's supervision, when it refused to give that supervision or to furnish the services of its own agents as contracted for.

We have very carefully considered the whole record in this case and the lengthy and skillful arguments made in the scholarly brief of appellant's counsel, but find ourselves unable to concur with the conclusions therein reached and contended for that the judgment sustaining the demurrer to defendant Commission's answer as amended was erroneous, but are constrained to conclude that the chancellor's judgment was proper and without prejudice to any substantial right of the appellant Commission in sustaining appellee's demurrer and ordering it to perform its contract with appellee city and therefore said judgment should be and is affirmed.

Whole court sitting

Dietzman, C. J.

Being compelled to dissent from the majority opinion, and having dissented from a like opinion on the first appeal of this case, I deem it not inappropriate at the outset to state that I am in full accord with the principle of the law of the case. However, as I think the case presented on this appeal is vitally different from the one which the majority opinion on the former appeal held was presented in that appeal, I am of the opinion that the rule of the law of the case may be at once laid aside as inapplicable.

Let us begin where we agree. On the former appeal, the majority opinion said:

"The immunity of the commonwealth as the

sovereign from suit without legislative consent is absolute and unqualified. The State Highway Commission is an agency of the commonwealth and not a separate corporate body. * * *

"However, it does not seem to us that this case is to be brought within the rules affirmed in those cases. It is not a suit for damages or, strictly speaking, to collect a debt. It is a suit to compel the officers of the state to perform their undertaking made in behalf of the state under its direct authority. The rule that suits may not be maintained against officers or agencies who are but nominal parties where the state is the real party in interest does not apply where the suit is instituted against the agency or officer to compel performance of a duty required by statute. 25 R. C. L. 414. An action against state officers to compel them by mandamus or other similar process to perform official duties of a purely ministerial nature, involving no discretion as to the use of political or governmental power, is not a suit against the state and may be maintained without its consent."

While agreeing with the principles thus enunciated on the first appeal, I disagreed as to the manner of their application to the case presented, being of the opinion that the petition to which a demurrer had been sustained disclosed that the real case was not one to compel the officers of the state to perform an undertaking or ministerial duty, but in essence and in truth was a suit for damages for breach of contract or at least one to collect a debt.

On this appeal the majority opinion, as is proper, adheres to the principles laid down on the first appeal, and in this I agree with it. But again I disagree with it in the manner of their application.

When this case was returned to the lower court after our decision on the former appeal, the defendants, now appellants, reformed their answer, presenting their defenses in a pleading styled "Amended Answer to plaintiff's petition in equity as amended." To this answer, a demurrer was interposed and sustained. The defendants declining to plead further, judgment was entered in accordance with the prayer of the petition. Therefore the question presented on this appeal is, Do

the facts alleged in the answer disclose that this is in truth a suit for damages for breach of contract or to collect a debt. If they do, the demurrer was improperly sustained, since even under the principles laid down by the majority opinion on the first appeal the city of Frankfort may not recover if the appellants can establish by proof that in reality this suit is one for damages for breach of contract or to collect a debt. To recover on the theory of the majority opinion, the case presented must be one where the contract entered into was repudiated by the highway commission and on such repudiation was performed according to its terms by the city, leaving nothing for the highway commission to do but pay the consideration. If the city did not perform the contract entered into according to its terms, but on the repudiation of it by the highway commission did the work which was the subject-matter of the contract under different conditions and terms than those provided for in the repudiated contract, then it is obvious that the suit is not one to compel the highway commission to perform a ministerial duty by paying the consideration provided for in the original contract, but is one purely for damages for breach of that contract.

Now the contract entered into between the city and the highway commission provided that the State Highway Commission should make all the surveys, plans, and specifications for improving this highway, and that the commission should have actual charge and supervision of the construction thereof. The agreement further provided that the highway commission should advertise for bids and award the contract subject to the approval of the board of council of the city of Frankfort, and that it and the city of Frankfort should pay for the road in equal proportions; the city of Frankfort providing for its part of the cost by assessing the same against the abutting property owners. It is this contract and this one only that the city could, even under the principles of law laid down in the majority opinion, perform and then call on the highway commission to pay therefor. Does the answer allege that the work done by the city was entirely different and performed under different conditions and terms from those provided for by the repudiated contract? Let us attend to a summary of the third paragraph of that amended answer. This paragraph a f t e r

setting out that portion of the original contract to the effect that the streets to be constructed and to be thereafter maintained by the highway commission were to be constructed under surveys, plans, and specifications prepared by the highway commission and under contracts let by it, alleges that the highway commission did prepare the plans and specifications and did advertise for bids; that the bid of the Irvine Construction Company was the lowest bid for the project, but for certain reasons (not here pertinent) said bid was rejected; that, after the rejection of said bid, the city of Frankfort, by a contract with the Kentucky Traction & Terminal Company, released that company, not only from any liability to pay for any part of the construction of the streets over which its tracks ran and which were to be constructed under the original contract and paid for by the State Highway Commission and the city of Frankfort in equal shares, but also from any liability to maintain that portion of such streets between its tracks which prior to such release it would have had to maintain. (I pause here to say that, while it may be true that the release of the traction company from having to pay any part of the construction of the streets may not have affected that part of the cost to be paid by the highway commission but only the city's half, yet surely the release of it from having to maintain the streets between its tracks added materially to the burden of the highway commission who under the contract between it and the city is obliged to maintain the streets constructed.) To resume—this amended answer further alleges that the city abandoned the plans and specifications prepared by the highway department, and employed by W. J. Horrigan and associates, incorporated, of Louisville, Ky., to prepare plans and specifications and to do all the engineering work in connection with said streets; that this firm did prepare plans and specifications which differed substantially from the plans and specifications theretofore prepared by the State Highway Commission, in that the new plans and specifications provided for the use of different types and standards of construction from those provided by the plans and specifications prepared by the State Highway Commission; that no part of the streets was constructed in accordance with the plans and specifications prepared by the highway commission, but was constructed of a much cheaper and less substantial type of asphalt

construction; that some of the streets were constructed of sheet asphalt on a crushed stone base of inadequate thickness, making maintenance a costly obligation; that the streets between the tracks of the street car company were constructed of concrete which was not reinforced, thereby increasing maintenance charges; that what concrete was laid was of poor grade and poorly laid; that the city by ordinance contracted its city limits, thereby throwing out of such limits about one-third of a mile formerly in the city, and which, under the contract between the city and the highway commission, would have been paid for in equal shares by the city and the highway commission, the result of which was that the State Highway Department has to pay all the cost of constructing that third of a mile thus thrown outside the city limits. Does not this resume of the third paragraph of this amended answer demonstrate that enough facts are alleged which, if established by proof, show that the city abandoned the plans and specifications and its obligations provided for by the contract between it and the highway commission, and went out and built the streets itself of different construction and under entirely different plans and specifications from those provided for by the highway commission; that by the way it did construct the streets it materially increased the maintenance to be performed by the highway commission, and that it threw a greater cost on the highway department by contracting the city limits. How can it be argued that the amended answer of the appellant does not allege facts which, if established, show that the city is not asking a mandamus to compel the highway commission to perform its part of an unexecuted contract, but in fact and in truth is seeking to hold the State Highway Department, an arm of the government which cannot be sued for damages, for breach of that contract? About the only answer which seems to be advanced by the majority opinion is that these deviations were slight and immaterial. I controvert that statement. To say that a construction of a series of streets with a cheap type of construction, on an inadequate base, with concrete not reinforced between car tracks, all of which adds heavily to the maintenance obligation of the highway commission, a release of a traction company from having to maintain that portion of the streets between its tracks which run for a very long distance over the streets constructed, thus throwing the entire maintenance upon the highway com-

mission, a thrusting of the full payment of a third of a mile of street upon the commission when it was under obligation to pay for only half, are but slight and immaterial deviations from the original contract, is, to my mind, a shutting of the eyes to the realities of the situation. I cannot agree to any such result. I believe the amended answer of the appellants, if established by proof, clearly presents a defense.

I am authorized to state that Judges Thomas and Rees concur in these views and this dissent, Judge Thomas being further of the opinion that, as the highway commission renounced the contract before the city had done anything under it, the city did not have the right to construct thereafter the streets and hold the highway commission for the payment of them.