## Geveden, County Treasurer, v. Fiscal Court of Carlisle County.

(Decided March 24, 1936.)

466

ROBERT L. GEVEDEN for appellant.

T. M. COLLINS, B. B. MORRIS, BEN S. ADAMS and H. H. LOVETT for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On September 1, 1928, Carlisle county had a floating indebtedness of $47,000. The record before us shows that this indebtedness had been incurred in the construction, reconstruction, and maintenance of the county roads and bridges. On September 10, 1928, the fiscal court of Carlisle county authorized the issuance and sale of $47,000 of funding bonds. The bonds were dated September 1, 1928, and were to mature $5,000 on September 1, 1938; $7,000 on September 1, 1943; $10,000 on September 1, 1948; $12,000 on September 1, 1953; and $13,000 on September 1, 1958. The bonds were sold and the proceeds were used to pay the outstanding county warrants which had been issued from time to time. The bonds were issued pursuant to section 1857 of the Kentucky Statutes, which authorizes the fiscal court of a county owing debts contracted in the construction or repair of bridges or turnpikes to fund such debt and to issue the bonds of such county for the purpose of taking up and canceling a debt so contracted.

In Baker v. Rockcastle County Court, 225 Ky. 99, 7 S. W. (2d) 846, it was held that, under section 158 of the Constitution and section 1857 of the Kentucky Statutes, a county has authority to issue funding bonds to take care of a valid, floating indebtedness. The interest on the funded debt was paid as it matured, until September 1, 1934, when all of the interest then

due, except $110, was paid. Since that time the appellant, who is the treasurer of Carlisle county, has failed and refused to pay the semiannual interest, and there was due when this action was instituted the sum of $2,695.

In May, 1935, the fiscal court of Carlisle county authorized the issuance and sale of bonds in the amount of $41,000, the proceeds to be used to pay certain judgments that had been obtained against the county and outstanding warrants. In Coil v. Ham, 260 Ky. 650, 86 S. W. (2d) 529, a judgment establishing the validity of these bonds was affirmed. These bonds have not been sold. Appellee asserts that the sale of these bonds has been rendered impossible by reason of appellant's refusal to pay the interest due on the funding bonds previously issued. On November 4, 1935, the fiscal court of Carlisle county passed a resolution directing the county treasurer to pay the interest then due on the bonds issued September 1, 1928. It was recited in the resolution that Carlisle county had in its treasury to the credit of the sinking fund the sum of $19,507.66, and that $18,144.46 of that sum was derived from the county's portion of the revenue which had been collected by the commonwealth of Kentucky under chapter 25 of the Acts of the General Assembly passed at the special 1934 session, and known as the Gross Receipts Tax Law (Ky. St. Supp. 1934, sec. 4281v-1 et seq.). The appellant refused to pay the past-due interest on the funding bonds, and the fiscal court of Carlisle county brought this action in which it sought a writ of mandamus to compel him to pay the interest.

It was alleged in the petition that the bonded indebtedness of Carlisle county consisted of $162,000 of road and bridge bonds duly issued by the fiscal court pursuant to a vote of the people of the county, and $47,000 of funding bonds issued on or about September 10, 1928, under section 1857 of the Kentucky Statutes, and that the refusal of the county treasurer to pay the interest on the funded bonds had impaired the credit of the county. The first paragraph of the defendant's answer admitted most of the allegations of the petition, but denied that the funding bonds issued in September, 1928, were valid, or

that the county's portion of the taxes collected under the Gross Receipts Tax Act could be applied to the payment of interest on the funding bonds issued under section 1857 of the Kentucky Statutes. In paragraph 2 it was alleged, in substance, that the floating indebtedness funded in September, 1928, was invalid, because all of it had been incurred subsequent to January 1, 1923, and during each year thereafter the county had appropriated and expended from its road fund more than it had levied and collected, and that it had levied the maximum rate permitted by law. The amount that the maximum levy would produce, and the amount expended each year, was set out. In paragraph 3 the amount lost by the county during each year because of exonerations was pleaded. In paragraph 4 it was alleged that the fiscal court was without authority to appropriate and expend any of the money received by it from the gross receipts tax for any purpose until it had paid and retired all of the outstanding, voted road and bridge bonds issued under section 4307 of the Kentucky Statutes. Paragraph 5 was substantially the same as paragraph 4, and in paragraph 6 the defendant alleged that he did not know the names of the holders of the funding bonds issued in September, 1928. A motion to strike paragraphs 2, 3, and 6 was sustained, and a demurrer to the other paragraphs of the answer was sustained. The defendant declined to plead further, and the court entered a judgment ordering and directing the defendant to pay the interest then due on the funding bonds issued in 1928.

Section 18 of the Civil Code of Practice provides that every action must be prosecuted in the name of the real party in interest, and appellant insists that the demurrer to the petition should have been sustained since the fiscal court of Carlisle county is not the real party in interest within the meaning of that section of the Code. The real party in interest is one who has an actual and substantial interest in the subject-matter of a suit. Gay v. Jackson County Board of Education, 205 Ky. 277, 265 S. W. 772. The action of the county treasurer in refusing to pay the interest on the funding bonds when due was impairing the credit of the county, and was likely to

subject it to expensive litigation. It was the duty of the fiscal court to maintain the county's credit, and to see that its obligations were met and unnecessary actions against it avoided. The petition assumed that the bonds were valid, and the only relief sought was a writ of mandamus to compel the treasurer of the county to pay, out of funds in his hands, a valid debt which was past due. The only attack on the validity of the debt was in the defendant's answer. The fiscal court had an actual interest in the subject-matter, and the demurrer to the petition was properly overruled.

The only other questions worthy of consideration are: (1) Were the averments of the answer as to the invalidity of the funding bonds sufficient; and (2) can the county pay the interest thereon out of its portion of the funds derived from the gross receipts tax?

One who attacks the validity of the indebtedness of a county must allege facts showing that the indebtedness is invalid. Elliott v. Fiscal Court of Pike County, 237 Ky. 797, 36 S. W. (2d) 619. In his answer the appellant stated the rate of the levy for each year during which he alleged the floating indebtedness was incurred, and the total amount that was, and could be, collected under the levy. He also stated the amount that was expended each year, and alleged that the excess was an invalid indebtedness, since it exceeded the revenue for the year, and was therefore incurred in violation of section 157 of the Constitution.

The answer was defective in two respects: First, it failed to set out the assessments for the respective years so that the amounts the levies would raise could be determined, and the averments as to these amounts were merely conclusions of the pleader. An indebtedness contracted by the proper officials of a county, or other municipality, is presumptively valid, and a pleading challenging its validity must state facts from which its invalidity can be determined. Pulaski County v. Richardson, County Treas., 225 Ky. 556, 9 S. W. (2d) 523; Rowland v. City of Paris, 227 Ky. 570, 13 S. W. (2d) 791; Parsons v. Arnold, 235 Ky. 600, 31 S. W. (2d) 928; Davis v. City of Newport, 239 Ky. 610, 40 S. W. (2d) 281; Williams v. Estill County, 253 Ky. 417, 69 S. W. (2d) 683. Second, the ans-

wer wholly failed to allege facts showing that the warrants issued by the county, which were paid off out of the proceeds of the sale of the funding bonds, were invalid. Even if it be conceded that the fiscal court of Carlisle county contracted debts in excess of the constitutional limit during the years 1923 to 1928, inclusive, as alleged in the answer, it nowhere appears that the particular warrants retired by the funding bonds were invalid. We would have to assume that these warrants were issued after the income and revenue provided for the year had been exhausted. They may have been issued for debts created before the constitutional limit for the year had been reached, and in that event they were valid, although the fiscal court later in the year created debts which exceeded the income and revenue for the year. City of Covington v. O. F. Moore Co., 218 Ky. 102, 290 S. W. 1066; Pace v. City of Paducah, 241 Ky. 568, 44 S. W. (2d) 574; Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; City of Richmond v. Durham, 260 Ky. 95, 83 S. W. (2d) 879.

Appellant insists that if the funding bonds issued in September, 1928, are valid, the county's portion of the gross receipts tax cannot be applied to their payment until the $162,000 of voted bonds, issued pursuant to section 4307 of the Kentucky Statutes, have been retired. Section 14 of the Gross Receipts Tax Law, section 4281v-16 of the Kentucky Statutes, 1934 Supplement, provides that the county's portion of the tax shall be received by the treasurer of the county and credited to the road fund of the county. It then provides that:

"The fiscal courts shall first direct the payment annually from the road fund to the sinking fund, all of such fund so received under this act, or such a sum which is sufficient to make the payments upon principal and interest of the bonded indebtedness of such county created by the construction and/or maintenance of public roads, or bridges, or, if there be no bonded indebtedness, then all of the funds so received under the provisions of this act shall be applied to the payment of the floating indebtedness created by the construction and/or maintenance of public roads and bridges

in the county, and, if there be no bonded or floating indebtedness created by the construction and/or maintenance of public roads and bridges within the counties, then such funds so received by the provisions of this act shall be expended under the orders of the fiscal courts for the construction and/or maintenance of public roads within the counties.''

The act provides that the money so apportioned to the counties shall first be applied to the payment of the principal and interest of the bonded indebtedness of the county created by the construction or maintenance of public roads or bridges. It makes no distinction between bonds authorized by a vote of the people and issued pursuant to section 4307 of the Kenttucky Statutes, and funding bonds issued pursuant to section 1857 of the Statutes, and it was so held in effect in Fiscal Court of Scott County v. Davidson, County Treas., 259 Ky. 498, 82 S. W. (2d) 801.

The judgment is affirmed.